

January 5, 2026

*Sent via ECF*

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

**Orrick, Herrington & Sutcliffe LLP**
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
+1 415 773 5700
**orrick.com**

**Annette L. Hurst**
E  ahurst@orrick.com
D  +1 415 773 4585
F  +1 415 773 5759

RE:   *In re OpenAI, Inc. Copyright Infringement Litigation* (No. 1:25-md-03143) This document relates to the following Class Cases: Case No. 1:23-cv-08292, Case No. 1:23-cv-10211, Case No. 1:24-cv-00084, Case No. 1:25-cv-03291, Case No. 1:25-cv-03482, Case No. 1:25-cv-03483.

Dear Judge Wang:

  Microsoft opposes Class Plaintiffs' December 22, 2025, letter seeking to compel production of revenues of each and every app in Microsoft 365 ("M365") and reiterates its motion for a protective order. MDL Dkt. 1000 at 1. Because Plaintiffs' letter confuses a number of concepts, a quick recap of M365 licensing is in order. M365 is not a singular product but a family of software apps that are licensed together. Most people readily know Word, Excel, and PowerPoint, but M365 also includes apps like OneDrive (file storage), Clipchamp (video creation), and business-focused apps such as Visio (diagramming and visualization) and Power BI (data analytics).

  Since the introduction of LLM features into M365 apps, users can ask Copilot to summarize a Word document, direct PowerPoint to create a presentation based on documents stored on the company's network, or search their Outlook inbox using natural language queries. Until very recently, access to those features required a separate license. In other words, an enterprise user who did not pay the separate license fee could not access any LLM-powered features in their Word, Excel or other M365 apps *until September 2025*. Beginning in September 2025, the base M365 enterprise license began covering a limited set of LLM-powered features in M365 apps, while access to the full integration still requires an additional license.

  Plaintiffs acknowledge that Microsoft has already produced the financial data directly associated with the LLM-powered use of M365 apps, in the form of spreadsheets detailing revenues, P&L reports, and cost data tied to the additional AI-specific per-seat M365 licenses that enabled use of LLM-powered features. Plaintiffs now demand financial and marketing data regarding every single M365 app, even if it never had the capability to access any LLM, even if no one ever paid a separate license fee to use LLM features, and even if it relied on LLM features that were introduced long after Plaintiffs filed their consolidated complaint. Yet, Plaintiffs characterize their requests as "narrowed." They are not. They will blow up the case



schedule for no good reason. The Court should deny Plaintiffs' request as it contains no compelling reason for the Court to revisit its denial of Plaintiffs' prior motion seeking this information.

### I. Plaintiffs Seek to Impermissibly Broaden the Scope of the Case Using a Current Licensing Model.

Plaintiffs base their motion on a chart from Microsoft's website that describes the availability of LLM features in two tiers of M365 enterprise licensing. The base M365 license shown on the left includes certain limited LLM features, while customers have to pay an additional fee to be able to fully integrate LLM-powered features in their M365 apps, as shown in the right column in Plaintiffs' Exhibit 4. In Plaintiffs' telling, this chart proves that all versions of M365 have at least some LLM functionalities, so they are entitled to all financial data for all of M365. But there is a glaring problem with Plaintiffs' reliance on this chart. It describes the state of affairs beginning in **September 2025**—three months *after* Plaintiffs filed their consolidated complaint. Plaintiffs omit this inconvenient fact from their brief, as well as any mention of the fact that before September 2025, the base M365 license did not allow integration of LLM features into any M365 app.

Thus, if Plaintiffs seek discovery into just-released versions of M365, they run afoul of Judge Stein's clear directive that "the consolidated complaint was to be limited to 'simply the products and causes of action that had already been asserted' in the class action complaints that had been filed prior to the Court directing the parties to file a Consolidated Class Action Complaint." MDL Dkt. 707 at 3. By definition, a product that did not exist until September 2025 cannot have been included in Plaintiffs' consolidated complaint.

Another reading is that Plaintiffs seek revenues for earlier base versions of M365 just because the current version comes with some LLM features. As Plaintiffs concede, Microsoft has already produced data showing separate license revenues tied to users' ability to access LLM features. Plaintiffs now appear to be seeking all M365 revenue *unrelated to LLM integration.* That is impermissible for the reasons below.

### II. Plaintiffs' Request Would Upend the Existing Case Schedule Based on an Implausible Relevance Foundation.

Plaintiffs already have financial documents showing revenues tied to LLM integrations into M365 apps. We are here because they are seeking financial and marketing documents for versions of M365 apps that were *never able to access any LLM functionality*. Plaintiffs' only attempt to argue relevance is that their burden is low at this stage and all they have to do is allege that these products are causally related. But before they completely upend the case schedule forcing Microsoft to undertake the significant new investigation they demand, Plaintiffs must at least show that a causal nexus between the infringement and the infringer's profits is plausible— as the cases they cite make abundantly clear. *See, e.g.*, *Viktor v. Top Dawg Ent. LLC*, 2018 WL 5282886, at *3 (acknowledging possible causal link between the unlicensed display of an artist's

<a>
</a>
<b>
</b>
<a>
</a>



work in a music video and infringer's profits); *Prolo v. Blackmon*, 2022 WL 2189643, at *9 (C.D. Cal. Mar. 25, 2022) (complaint plausibly alleged that defendants "obtained direct and indirect profits they would not otherwise have realized but for their infringement" of plaintiff's photograph); *Kaseberg v. Conaco, LLC*, 2016 WL 3997600, at *7 (S.D. Cal. July 26, 2016) (significantly narrowing the scope of discovery to revenues earned from episodes of show that featured plaintiff's jokes). When the causal connection is not plausible, discovery is denied. *See, e.g.*, *Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020) (denying financial discovery because plaintiff failed to "allege facts adequate to state a causal relationship" between copyrighted song and defendant's profits).

In Plaintiffs' consolidated complaint, the only alleged acts of infringement relate to OpenAI's LLMs. It is manifestly *not plausible* to allege that Microsoft earned any revenue on versions of M365 apps that could not access any LLMs. On the other end of the scale lies the massive burden that allowing this discovery would entail. If Plaintiffs are allowed to put these profits at issue, Microsoft will have to prove all expenses associated with the revenue at issue and would bear the burden of allocating the profits to factors other than the alleged infringement, such as Microsoft's own expertise, technological contributions, brand value, business acumen or other market factors. *See Rogers v. Koons*, 960 F.2d 301, 313 (2d Cir. 1992) (in apportioning profits, courts consider factors such as the infringer's own brand strength and other elements of value unrelated to the infringement); *see also Sygma Photo News, Inc. v. High Society Magazine, Inc.*, 778 F.2d 89, 95 (2d Cir. 1985).

To meet its burden, Microsoft would have to investigate each M365 app and identify witnesses to testify how each program operates and what drives the value for consumers. For example, Microsoft would need at least 2-3 witnesses for each of Outlook, Word, Excel, PowerPoint, and all the other apps and features to talk about the nature of the product, how it works, how it is marketed, and how those factors are reflected in Microsoft's financial data. *See* Supp. Thornburgh Decl. ¶ 7. There is no way to do this in the time remaining in the current discovery schedule, which Microsoft strongly believes should not be disturbed. And certainly not on the basis of a flimsy relevance justification that does not pass the red-face test.

Even if the Court were to construe Plaintiffs' request as limited to the M365 version released in September 2025, granting the request would still require a massive new discovery effort resulting in a case schedule change. Such an investigation would involve the dozens or even hundreds of "System Owners" of LLM-based product integrations referenced in Microsoft's prior motion for a protective order. ECF 858 (11/24/25 Thornburgh Decl.) ¶¶ 9-13; *see also* Supp. Thornburgh Decl. ¶ 8. As noted above, the current base M365 version provides some LLM functionality to various M365 apps without having to purchase a separate license. So in addition to the same work described above into the functionality and value-proposition of each and every M365 app, Microsoft would also have to investigate whether and how much value is assigned to the LLM features in those apps by users who never bothered to separately license the full LLM functionality and who may have never used it.

3



Finally, many of Microsoft's enterprise customers are on multi-year licenses. *See* Supp. Thornburgh Decl. ¶ 9. Microsoft's financial personnel would therefore need to expend significant effort to identify whether there even is any revenue attributable to new licenses purchased after the September 2025 M365 Copilot Chat release. *See id.*

The Court should deny Plaintiffs' Motion and instead re-affirm its prior grant of Microsoft's motion for protective order, enabling the parties to focus their efforts on completing depositions by the current deadline.

Respectfully submitted,

/s/ *Annette L. Hurst*
Annette L. Hurst