UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION<br><br>This document relates to:<br><br>Case No. 1:23-cv-08292<br>Case No. 1:23-cv-10211<br>Case No. 1:24-cv-00084<br>Case No. 1:25-cv-03291<br>Case No. 1:25-cv-03297<br>Case No. 1:25-cv-03482<br>Case No. 1:25-cv-03483 | Case No. 25-md-3143-SHS-OTW |

**MEMORANDUM OF LAW IN OPPOSITION TO
MICROSOFT'S MOTION TO STRIKE**

## TABLE OF CONTENTS

BACKGROUND ..................................................................................................................... 3

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT ........................................................................................................................... 4

    I.    Microsoft's "independent work" should not be stricken .......................................... 4

    II.    Later GPT models should not be stricken ............................................................... 7

    III.    The CCAC's "reference to an ASIN number" should not be stricken ..................... 9

CONCLUSION ...................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Carovano*, 851 F.2d 561 (2d Cir. 1988) ................................................................. 6

*Bartz v. Anthropic PBC*, 2025 WL 1993577 (N.D. Cal. July 17, 2025) ................................. 2, 10

*Bensky v. Indyke*, 743 F. Supp. 3d 586 (S.D.N.Y. 2024) ....................................................... 10

*Bytemark, Inc. v. Xerox Corp.*, 2022 WL 94859 (S.D.N.Y. Jan. 10, 2022) ............................ 6, 9

*EEOC v. Kelley Drye & Warren, LLP*, 2011 WL 3163443 (S.D.N.Y. July 25, 2011) ............... 10

*Eileen Grays, LLC v. Remix Lighting, Inc.*, 2019 WL 6609834 (N.D.N.Y. Dec. 5, 2019) ......... 9

*Exley v. Burwell*, 2015 WL 3649632 (D. Conn. June 10, 2015) ............................................ 10

*Fir Tree Cap. Opportunity Master Fund, L.P. v. Am. Realty Cap. Props., Inc.*, 2017 WL 10808809 (S.D.N.Y. Dec. 14, 2017) ................................................................................ 10

*Greenlight Cap., Inc. v. Fishback*, 2024 WL 5168623 (S.D.N.Y. Dec. 19, 2024) ................... 4

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ....................................... 10

*Koury v. Xcellence, Inc.*, 649 F. Supp. 2d 127 (S.D.N.Y. 2009) ............................................. 9

*Lipsky v. Commonwealth United Corp.*, 551 F.2d 887 (2d Cir. 1976) ................................. 4, 5, 9

*Miller v. Hyundia Motor Am.*, 2016 WL 5476000 (S.D.N.Y. Sept. 28, 2016) ........................ 6

*Rys v. Clinton Cent. Sch. Dist.*, 2022 WL 1541301 (N.D.N.Y. May 16, 2022) ....................... 4

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997) ................................................................... 9

*Tian v. Top Food Trading Inc.*, 2023 WL 5200439 (E.D.N.Y. Aug. 14, 2023) ........................ 4

*Woe ex rel. Woe v. Cuomo*, 729 F.2d 96 (2d Cir. 1984) ...................................................... 10

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. 2025) ... 4, 9

**Rules**

Fed. R. Civ. P. 12(f) .............................................................................................................. 4

Fed. R. Civ. P. 8(a)(2) .......................................................................................................... 6

Microsoft pushed to centralize these cases and for the class plaintiffs to file a single consolidated complaint. Now that Microsoft got what it wanted, it seeks to tinker with that complaint and slice off allegations were previously at issue in the class cases before the MDL.

The Court ordered Plaintiffs to draft a consolidated class action complaint (CCAC) with "no new products or causes of action." May 22 Hrg. Tr. 20:15–23, Ex. 3.[1] Class Plaintiffs complied with that order, limiting the CCAC to products and causes of action that were at issue in the *Tremblay* and *Authors Guild* actions. Like OpenAI in its concurrently filed motions to strike and dismiss (Dkts. 118 & 527), Microsoft now seeks to expand the Court's directive to strike allegations that were included in the underlying complaints years ago.

*First*, Microsoft expands "no new causes of action" to strike two allegations about Microsoft's "independent work" on AI. It also asks the Court to "require Plaintiffs to amend . . . to include only claims against Microsoft related to its alleged involvement in OpenAI's training of its models." Opening Br. at 13, Dkt. 327. But Plaintiffs *agree* that Microsoft's own, independently trained LLMs are *not* part of this case. Indeed, Plaintiffs filed a *separate* lawsuit (the *Bird* class action, No. 1:25-cv-05282 (S.D.N.Y.)) that addresses Microsoft's independent infringement separate from its work with or for OpenAI. Plaintiffs have made that clear multiple times to Microsoft. What remains here is what has been part of this case for years—Microsoft's infringement related to its work with OpenAI. That includes, for example, any use of Azure servers for the OpenAI models; Microsoft's download of pirated materials for OpenAI; and Microsoft's support, knowledge, and encouragement of OpenAI's infringement. That should address Microsoft's concern. If any dispute remains, the allegations should not be stricken because they simply describe the direct-infringement claim against Microsoft, which has been asserted since

---

[1] Unless otherwise noted, all exhibit numbers refer to those exhibits attached to the Walter Declaration, and all "Dkt." citations refer to ECF entries in the instant case, No. 1:25-md-3143.

1

2023 (and was reasserted in 2024). *Alter* Compl. ¶¶ 118–124, Dkt. 26, No. 1:23-cv-10211; *Authors Guild* Compl., ¶¶ 412–429, Dkt. 69, No. 1:23-cv-08292.

*Second*, Microsoft twists "no new products" to exclude products that were at issue in the *Tremblay* case before the MDL. Although *Tremblay* did not name Microsoft, the Court ordered the CCAC to include products "that have been already asserted in *these cases*." May 22 Hrg. Tr. 20:15–23, Ex. 3. The CCAC's list of products matches *Tremblay*'s. To cleave off certain models only for Microsoft would run counter both to the Court's instruction to combine all the underlying allegations and to the "public interest in these things being resolved." *Id.* at 36:20–24.

*Third*, Microsoft quibbles with Plaintiffs' class definition, even though, at Defendants' own request, class-certification briefing will not occur until after summary judgment is decided. Microsoft moves to strike any reference to an ASIN number, under the mistaken theory that including any such reference would expand the class to "any item sold on Amazon." Opening Br. at 18 (emphasis omitted). Contrary to Microsoft's alleged concern, the CCAC makes crystal clear that the asserted works are "books," and the use of ASIN numbers to identify those books does not expand the asserted works to include "magazines, films, and music." *Id.* Indeed, the CCAC's class definition closely tracks the definition of the class that Judge Alsup recently certified in *Bartz v. Anthropic*, which as this Court knows contains similar allegations (and indeed the same people). *Bartz v. Anthropic PBC*, 2025 WL 1993577, at *1–2, 18 (N.D. Cal. July 17, 2025).

The CCAC's allegations are drawn from the complaints in the five centralized cases. The CCAC has no new products and no new causes of action; just the required "short and plain statement" of the consolidated allegations supporting the same causes of action that Plaintiffs have been asserting for years. Microsoft's motion is nothing more than a disguised motion to dismiss, which the Court expressly cautioned against. The Court should deny it.

2

**BACKGROUND**

Nearly two years after filing, the New York (*Authors Guild*) and California (*Tremblay*) cases[2] were centralized. After the first post-centralization hearing, the Court ordered Plaintiffs to "file a single Consolidated Class Action Complaint . . . which is to include only the same products and causes of action that have already been asserted in the pending putative class actions." Dkt. 60. At the hearing, the Court explained that this approach was meant to sweep in all allegations made in the underlying complaints. *See, e.g.*, May 22 Hrg. Tr. 39:24–25, Ex. 3 ("If there are any models already in the case, that's okay.").

The goal was to avoid relitigating the pleadings. The Court rejected the pending motions to amend because they would invite a new round of back and forth: "It seems to me all that would do would be to invite another round of Rule 12(b)(6) motions, and would expand discovery, if you're talking antitrust or additional DMCA claims." *Id.* at 25:16–19. These new pleading-based motions "would slow everything down" and interfere with the "public interest in these things being resolved." *Id.* at 26:21–23, 36:20–24.

The CCAC followed these instructions. It includes the same three claims for copyright infringement as the *Authors Guild* complaint. *Compare* CCAC ¶¶ 308–327, Dkt. 183, *with Authors Guild* Compl. ¶¶ 412–429, Dkt. 69. And it includes the same products as those asserted in *Tremblay*. *Compare* CCAC ¶ 5, *with Tremblay* Compl. ¶ 36, Dkt. 120.

---

[2] *Authors Guild* and *Tremblay* are themselves consolidated cases. *Authors Guild* consolidated *Authors Guild v. OpenAI, Inc.*, No. 1:23-cv-08292 (S.D.N.Y) and *Alter v. OpenAI, Inc.*, No. 1:23-cv-10211 (S.D.N.Y.). *Tremblay* consolidated *Tremblay v. OpenAI, Inc.*, No. 3:23-cv-03223 (N.D. Cal.); *Silverman v. OpenAI, Inc.*, No. 3:23-cv-03416 (N.D. Cal.); and *Chabon v. OpenAI, Inc.*, No. 3:23-cv-04625 (N.D. Cal.). Plaintiffs refer to the consolidated complaints and the five original complaints as "the underlying complaints."

**LEGAL STANDARD**

Under Rule 12(f), "[t]he court may strike . . . any redundant, immaterial, impertinent, or scandalous matter." Motions to strike are disfavored. *See Greenlight Cap., Inc. v. Fishback*, 2024 WL 5168623, at *3 (S.D.N.Y. Dec. 19, 2024). And they are still disfavored even when the argument is that the plaintiff allegedly went beyond the scope of the leave to amend. *See Tian v. Top Food Trading Inc.*, 2023 WL 5200439, at *2 (E.D.N.Y. Aug. 14, 2023); *Rys v. Clinton Cent. Sch. Dist.*, 2022 WL 1541301, at *2 (N.D.N.Y. May 16, 2022). Because motions to strike are ultimately just "tamper[ing]" with the pleadings, there must be "a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). "Any doubt about whether the challenged material" should be stricken "should be resolved in favor of the non-moving party." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (3d ed. 2025).

**ARGUMENT**

**I. Microsoft's "independent work" should not be stricken**

Microsoft first seeks to strike parts of two paragraphs of the CCAC (¶¶ 294, 311) that, it says, "expand the case" to include Microsoft's "independent work" on AI, namely "its own LLM work separate from OpenAI." Opening Br. at 13. So it asks the Court to "require Plaintiffs to amend . . . to include only claims against Microsoft related to its alleged involvement in OpenAI's training of its models." *Id.*

At the outset, Plaintiffs will stipulate that this case does *not* include "Microsoft-trained LLM[s]." Opening Br. at 2–3. As Microsoft notes, that issue has already been decided. *Id.* at 3 (citing Dkt. 293). And as Microsoft also notes, *Bird* covers Microsoft's own AI models. *Id.* at 7. The CCAC's allegations do not address Microsoft's AI development that is entirely independent

4

of OpenAI, and Plaintiffs will not make that development part of this case. That guarantee alone should resolve this part of the motion.

If any residual dispute remains, it is not a "strong reason" to strike any allegation. *Lipsky*, 551 F.2d at 893. Instead, the two allegations targeted by this part of Microsoft's motion simply describe Plaintiffs' direct-infringement claim against Microsoft, which has been asserted since 2023. *See Alter* Compl. ¶¶ 118–124. For example, both the *Authors Guild* complaint and the CCAC allege that, "[t]hrough its creation and maintenance of the [Azure] supercomputing system, Microsoft directly made unlicensed copies and provided critical assistance to OpenAI in making unlicensed copies of copyrighted material—including Plaintiffs' works and other copyrighted books—for the purpose of training the GPT models." *Authors Guild* Compl. ¶ 137, 1:23-cv-08292, Dkt. 69 (S.D.N.Y.); CCAC ¶ 133. And both complaints also accuse Microsoft of further copying OpenAI's infringing copies by building the OpenAI models into Microsoft products. *See, e.g.*, *Authors Guild* Compl. ¶ 9; CCAC ¶ 12. These are the kinds of "reproduc[tions]" referred to in CCAC ¶¶ 294 and 311.

The CCAC is thus no different from the underlying complaints. So Plaintiffs did not exceed the scope of the Court's leave, and Microsoft has no other grounds to strike these allegations. These allegations have always been in the case (indeed, CCAC ¶ 311 is a nearly exact copy of *Authors Guild* ¶ 415), so Microsoft "already had a full opportunity" to move to strike them. May 22 Hrg. Tr. 25:13–23, Ex. 3. It should not be allowed to "slow everything down" now as the MDL gets under way. *Id.*

Nor should Plaintiffs be required to amend to address Microsoft's concerns. For the reasons above, an amendment is unnecessary. But even if the scope of the claim were unclear, Microsoft's approach is the wrong way to fix it. Microsoft would invent a new pleading requirement by

5

requiring Plaintiffs to plead a carve out. But Rule 8 requires only a "short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). Plaintiffs have done that. As explained above, the complaint describes Microsoft's acts that directly "reproduced" copyrighted works. So the paragraphs of the CCAC that Microsoft targets are supported by factual allegations and do not need to be amended.

Indeed, this allegation-claim connection is how the analysis is supposed to work. The allegations dictate what is or is not part of the claim. *See Albert v. Carovano*, 851 F.2d 561, 571 n.3 (2d Cir. 1988) ("Factual allegations alone are what matters."); *Miller v. Hyundia Motor Am.*, 2016 WL 5476000, at *16 (S.D.N.Y. Sept. 28, 2016) ("[A] plaintiff [must] allege facts sufficient to place the defendant on notice of the nature and scope of the claims against it."). But Microsoft puts the cart before the horse by *first* deciding what is "in" the case and *then* telling Plaintiffs to amend accordingly. That approach is doubly wrong because it does the analysis in reverse and requires Plaintiffs to plead what the claim is *not*.

Finally, Microsoft's approach would waste party and judicial resources. All of Microsoft's conduct relating to OpenAI's models should be in this case, as reflected in how discovery has proceeded so far and the scope of the operative pleadings prior to the MDL. *See Bytemark, Inc. v. Xerox Corp.*, 2022 WL 94859, at *12 (S.D.N.Y. Jan. 10, 2022) ("Defendants have been on notice of these claims, whose underlying factual allegations are already a part of the previous complaints, and therefore will not be unduly prejudiced by having to litigate them. Indeed, when a plaintiff's proposed new claims arise out of the same facts set forth in the original complaint, forcing plaintiffs to institute a new action against the defendant would run counter to the interests of judicial economy." (cleaned up)).

## II.     Later GPT models should not be stricken

Microsoft next moves to strike model-related allegations. Microsoft says both older models (GPT-1 and GPT-2) and newer models (anything after GPT-4 Turbo) are outside the case.

*First*, the CCAC does not allege that Microsoft was involved with these older models. *Compare, e.g.*, ¶ 4 ("Beginning in 2018, OpenAI created a series of large language models beginning with GPT-1 and GPT-2."), *with* ¶ 5 ("Defendants OpenAI *and Microsoft* collaborated closely to create and monetize the next iteration of generative artificial intelligence models known as GPT-3, GPT-3.5, . . . and their successors." (emphasis added)). But allegations regarding the creation and training of these earlier models support the claims against OpenAI (and did so in the underlying complaints), so these allegations should not be stricken. *See* CCAC ¶¶ 4, 81–82; *Tremblay* Compl. ¶¶ 36, 38, Dkt. 120; Opening Br. at 14 n.8 (noting that OpenAI has already "agreed to provide discovery into . . . GPT-1 [and] GPT-2.").

*Second*, the new models are in the case. The Court limited the CCAC to "the same products . . . that have already been asserted in the pending putative class actions." Dkt. 60; *see also* May 22 Hrg. Tr. 39:24–25, Ex. 3 ("If there are any models already in the case, that's okay.").

*Tremblay* asserted the later models. The consolidated *Tremblay* complaint alleges that "OpenAI has made other language-model variants that are in commercial use but are not publicly accessible. . . . OpenAI CEO Sam Altman confirmed that GPT-5 is under development. Together, OpenAI's large language models, including any in development, will be referred to as the 'OpenAI Language Models.'" ¶ 36. It also included "variant forms," like "gpt-4-0125-preview, gpt-4-turbo-preview, and gpt-4-32k." *Id.* (internal quotation marks omitted). *Tremblay* thus included versions that were not yet publicly available, like GPT-4V and GPT-4.5, as well as GPT-5 and any other models "in development." This allegation matches the CCAC's list of models. CCAC ¶ 5.

7

The discovery in *Tremblay* also involved these models. The *Tremblay* court ordered OpenAI to produce "the text pre-training data for in-development, text-based GPT-class of models . . . including the next GPT-class model still being developed." *Tremblay*, Dkt. 247 at 4. The court also ordered that, in responding to other document requests, OpenAI "*not exclude* documents because they concern a GPT-class model in development." *Id.* at 3–4 (emphasis in original). Plus, the court acknowledged that discovery about the models in development would be relevant to issues like fair use for the existing models. *See Tremblay* Dec. 17 Hrg. Tr. 48:20–52:6, Ex. 1.

Because these models are in the case, Microsoft's products built on these later models are in the case too. These related products seem to be Microsoft's main concern because, Microsoft says, they would expand discovery. But that is a problem of Microsoft's own making (and, according to Microsoft, an inevitable one). Microsoft sought centralization (over Plaintiffs' objection). *See* JPML Hrg. Tr. 9:20–11:9, Ex. 2. And even if the cases were not centralized, Microsoft acknowledged that it was "in California one way or the other." *Id.* at 10:3–8.[3]

Now, after centralization, Microsoft dislikes the combination: The *Authors Guild* complaint named Microsoft as a defendant and alleged that Microsoft's "sales and marketing software, coding tools, productivity software, and cloud storage services" used GPT-4. *Authors Guild* Compl. ¶ 59, Dkt. 69. As explained above, *Tremblay* included later models. And the Court instructed the Plaintiffs to file a CCAC that included all the underlying allegations. The CCAC thus combines the *Authors Guild* and *Tremblay* allegations, meaning Microsoft's tools supported by the later GPTs are included. Even if Microsoft regrets its decision, Plaintiffs did not exceed the

---

[3] Microsoft was originally a party only in *Authors Guild*. But at the time of centralization, there was an outstanding motion to add Microsoft as a defendant in *Tremblay*, and Microsoft had also been subpoenaed by the *Tremblay* plaintiffs. *See* JPML Hrg. Tr. 9:20–11:9, Ex. 2.

scope of the Court's leave. So there is no basis to strike these allegations. And even if there were "any doubt" about that, it "should be resolved in favor of" Plaintiffs. Wright & Miller § 1382.

*Third*, the interests of justice and efficiency again favor resolving these issues in this case. In granting injunctions against infringers, courts have noted that "[r]equiring Plaintiff to commence litigation for each future violation would be an extreme hardship, while preventing Defendant from continually infringing on Plaintiffs' copyrighted material is not." *Eileen Grays, LLC v. Remix Lighting, Inc.*, 2019 WL 6609834, at *4 (N.D.N.Y. Dec. 5, 2019). The same logic applies here. Microsoft does not argue that any of the legal issues are different for these later models or products. So filing a new case for each one would be a formality that would only waste the parties' and the Court's time. *See Bytemark*, 2022 WL 94859, at *12.

## III. The CCAC's "reference to an ASIN number" should not be stricken

Finally, Microsoft seeks to strike the class definition's "reference to an ASIN number." Opening Br. at 18. Unlike the other parts of its motion, Microsoft argues that the reference should be stricken not because it is new but because it is overbroad. Alternatively, Microsoft says the CCAC should be amended to "limit the relevant ASIN numbers to those encompassing fiction and non-fiction books." *Id.*

This is the kind of "tamper[ing]," *Lipsky*, 551 F.2d at 893, that makes motions to strike "time wasters." Wright & Miller § 1382. The CCAC must be read "as a whole." *Koury v. Xcellence, Inc.*, 649 F. Supp. 2d 127, 133 (S.D.N.Y. 2009) (quoting *Shapiro v. Cantor*, 123 F.3d 717, 719 (2d Cir. 1997)). When read that way, no one could be confused that this case is about books. *See, e.g.*, CCAC ¶¶ 2, 3, 6, 9, 13, 14 ("Plaintiffs seek to represent a Class of book copyright holders"), 67–68, 74, 97, 116, 119–120, 166 ("Plaintiffs' works collectively span a wide range of commercial fiction and nonfiction"), 171–292 (listing titles for each named plaintiff), 309 ("Plaintiffs and

9

members of the Class have created literary works"). Indeed, in the case against Anthropic, Judge Alsup certified a class defining "book" to mean "any work possessing an ISBN or ASIN." *Bartz v. Anthropic PBC*, 2025 WL 1993577, at *6 (N.D. Cal. July 17, 2025). So adding a "reference to ASIN" does not "expand the class beyond books to any item sold on Amazon." Opening Br. at 18 (emphasis omitted); *see Fir Tree Cap. Opportunity Master Fund, L.P. v. Am. Realty Cap. Props., Inc.*, 2017 WL 10808809, at *4 (S.D.N.Y. Dec. 14, 2017) (reading class definition in context); *EEOC v. Kelley Drye & Warren, LLP*, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) ("When reviewing a motion to strike, the court views the pleading under attack most favorably to the pleader." (citation omitted)).

Plaintiffs do not need to be any more precise at this stage. Defining the exact ASINs (or even "books") at issue can come later. *Exley v. Burwell*, 2015 WL 3649632, at *3 (D. Conn. June 10, 2015) ("[T]he precise composition of the class need not be established prior to class certification." (citing *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 45 (2d Cir. 2006)). Microsoft has not argued that Plaintiffs' class definition is somehow lacking with respect to any part of Rule 23. And class definitions inevitably evolve to conform to the proof presented at class certification. *See Woe ex rel. Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984) ("It is often proper . . . for a district court to view a class action liberally in the early stages of litigation, since the class can always be modified or subdivided as issues are refined for trial."). Motions to strike class allegations are especially disfavored because they cut off this evolution prematurely. *See Bensky v. Indyke*, 743 F. Supp. 3d 586, 596 (S.D.N.Y. 2024). Defining something as precise as the range of applicable ASINs is the province of class certification, not Rule 8's "short and plain statement."

## CONCLUSION

For these reasons, Microsoft's motion at Dkt. 326 should be denied.

Dated: August 14, 2025
New York, New York

/s/ Justin Nelson
Justin A. Nelson (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713.651.9366
jnelson@susmangodfrey.com

*Interim Lead Counsel for Class Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2025, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Henry Walter*
Henry Walter

13

## CERTIFICATE OF WORD COUNT

Pursuant to Local Civil Rule 7.1, I hereby certify that the foregoing document was typed using 12-point, Times New Roman font and contains 3,152 words, exclusive of the case caption, table of content, table of authorities, signature blocks, and certificates, but does include material in footnotes.

<em>/s/ Henry Walter</em><br>
Henry Walter